IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VICTORIA THACKER, | ) | CASE NO. 3:12-CV-1869 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT & RECOMMENDATION |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the
undersigned is whether the final decision of the Commissioner of Social Security (the
"Commissioner") denying Plaintiff Victoria Thacker's applications for Social Security Income
benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and a Period of
Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §
416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the
Commissioner be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff Victoria Thacker ("Plaintiff" or "Thacker") protectively applied for disability
benefits on March 24, 2008.  (Tr. 115, 181-84, 185-91).  Plaintiff's applications were denied
initially and upon reconsideration.  (Tr. 119-22, 123-25, 128-30, 131-33).  On November 25,
2008, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ") to
contest her denial of benefits.  (Tr. 140-41).  The Commissioner granted Plaintiff's request and
scheduled a hearing.  (Tr. 142-43).

On June 11, 2010, Administrative Law Judge Paul Yerian convened a hearing to evaluate Thacker's case.  (Tr. 45-114).  Plaintiff, represented by counsel, appeared and testified before the ALJ.  (*Id.*).  Carl Hartung, a vocational expert ("the VE"), also appeared and testified.  (*Id.*).  On October 18, 2010, the ALJ issued his decision in which after applying the five-step sequential analysis,[1] he concluded Thacker was not disabled.  (Tr. 28-39).

Following the issuance of this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council.  (Tr. 24).  However, the council denied Plaintiff's request, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 5-7).  Plaintiff now seeks judicial review of the Commissioner's decision.  Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows

   (1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

   (2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

   (3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

   (4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

   (5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

2

## II.  PERSONAL BACKGROUND INFORMATION

Thacker was born on December 22, 1967, and was 42 years old at the time of her hearing before the ALJ.  (Tr. 58).  Accordingly, Plaintiff was at all times considered a "younger person" for Social Security purposes.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  In the past, Plaintiff has worked as a short-order cook, donut maker, conveyor feeder/offload bearer, hospital cleaner and institutional cook.  (Tr. 99-101).

## III.  VOCATIONAL EXPERT TESTIMONY

During the hearing, the ALJ elicited testimony from a vocational expert.  The VE testified regarding Plaintiff's past work history and answered other questions posed to him by the ALJ and Plaintiff's counsel.  (Tr. 99-111).  The ALJ asked the VE a series of questions describing a hypothetical individual of Thacker's age, education and past employment history. In the first hypothetical question, the ALJ inquired whether such a person would be able to perform any of Plaintiff's past jobs if the person were limited to only "light work" as the term is defined by the Social Security regulations.  (Tr. 104).  The VE responded in the negative, but added that such an individual would be capable of performing other work in the economy, such as that of a housekeeper/cleaner, file clerk or mail clerk.  (Tr. 105-06).  The VE testified that these jobs existed in the North Central Ohio region in the following incidences: 797, 97 and 62, respectively.  (*Id*.).  The VE noted that the "workforce in that economic development region [wa]s not a high level".  (Tr. 106).

Based on this statement, the ALJ asked the VE to determine what percentage of available light and sedentary jobs, the hypothetical individual described could perform.  (*Id*.).  The VE answered that such an individual would be limited to 40% of the total number of light, unskilled jobs in the region.  (*Id*.).  In addition, the VE testified that if the person was further limited by the

inability to perform tasks involving strict time requirements or production quotas, the person would only be able to perform 15% of the total number of light, unskilled positions. (Tr. 107). Moreover, he confirmed that if Plaintiff truly was as limited as she alleged, she would be completely precluded from working. (Tr. 107-08).

Next, the ALJ questioned the VE regarding the availability of jobs permitting Thacker to elevate her legs. The VE answered that the need to elevate one's legs 12 to 14 inches throughout the course of a day would eliminate the availability of all jobs. (Tr. 108). He also explained that this limitation would automatically restrict the individual to sedentary work, and noted that most employers would not accommodate this limitation. (Tr. 109).

Lastly, Plaintiff's counsel questioned the VE regarding the reasoning level of the representative jobs identified by the VE. (Tr. 109-10). The VE confirmed that a person limited to reasoning levels of 1 or 2 would be capable of working, including performing the jobs previously identified. (Tr. 110). Although the VE admitted that the Dictionary of Occupational Titles ("DOT") did not categorize the enumerated jobs as having a reasoning level of 1, the VE attested that they could be performed with common sense. (*Id.*).

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant met the special earnings requirement of the Act on June 20, 2006, the date she says she became unable to work, and continues to meet those requirements through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since June 20, 2006.

3.   The claimant has the following impairments, severe in combination: degenerative disc disease of the cervical spine, status post fusion; degenerative disc disease of the lumbar spine; obesity, status post gastric bypass; a depressive disorder not otherwise specified; an obsessive

compulsive disorder not otherwise specified; a right heel spur;
fibromyalgia; hypothyroidism; and gastroesophageal reflux disease.

4.  The claimant does not have an impairment or combination of impairments
that meets or medically equals one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that the claimant has
the residual functional capacity to perform light work as defined in 20
CFR 404.1567(b) and 416.967(b) except as follows: the claimant cannot
climb ladders.  She can occasionally climb stairs, stoop, kneel, crouch, and
crawl.  She can occasionally reach overhead.  Contact with the public is
limited to occasional.

6.  The claimant cannot perform any past relevant work.

7.  The claimant was born on December 22, 1967 and was 38 years old,
which is defined as a younger individual age 18-49, on the alleged
disability onset date.

8.  The claimant has at least a high school education and can communicate in
English.

9.  Transferability of job skills is not material to the determination of
disability because using the Medical-Vocational Rules as a framework
supports a finding that the claimant is "not disabled," whether or not the
claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual
functional capacity, there are jobs that exist in significant numbers in the
national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social
Security Act, from June 20, 2006, through the date of this decision.

(Tr. 28-38) (internal citations omitted).

## V.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security

Income benefits only when she establishes disability within the meaning of the Social Security

Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform

5

"substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

6

VII.  <u>ANALYSIS</u>

Plaintiff challenges the ALJ's decision on several grounds.  Plaintiff's first assignment of error attacks the ALJ's reliance upon the vocational expert's testimony in rendering his ruling at step five of the sequential analysis.  Thacker's second assignment of error generally takes issue with the ALJ's discussion of the medical evidence, arguing that the ALJ's mischaracterization of the record skewed his ruling at later stages in the analysis.  Finally, Plaintiff's third assignment of error purports that the ALJ failed to properly evaluate her credibility.  Plaintiff's objections are not well-taken.

1.  Medical Evidence

A large portion of Plaintiff's brief contains objections to the ALJ's discussion, or lack thereof, of the medical evidence appearing within the record.  Thacker claims that the ALJ either omitted or misstated several pieces of medical evidence.  Thacker further claims that these errors caused the ALJ to deny controlling weight to the opinions of her treating physicians, thereby ultimately having a direct effect upon the hypothetical questions the ALJ posed to the VE and the VE's answers thereto.

As a general matter, the undersigned notes that while an ALJ is charged with considering all of the medical evidence within the claimant's record, there is no requirement that the ALJ expressly address each of the claimant's impairments within his decision.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision each piece of evidence submitted by a party.") (*citing Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  Yet, much of Plaintiff's arguments center on the implication that the ALJ had such a duty.  For example, Thacker highlights that the ALJ did not mention her problems with cellulitis, right leg edema,

varicose veins, obsessive compulsive disorder ("OCD"), or her Global Assessment of Functioning ("GAF") scores depicting serious to moderate symptoms.

Despite Thacker's contention to the contrary, the ALJ explicitly referenced her cellulitis and OCD during his discussion of the evidence at step two of the analysis.  Though the ALJ did not specifically mention Plaintiff's right leg edema, the records cited by the ALJ evidencing Plaintiff's right leg cellulitis also mentioned Plaintiff's right leg edema.  (*See* Tr. 632).  Thus, it is reasonable to conclude that the ALJ's review of this record demonstrated his knowledge and consideration of Thacker's right leg edema also.  Finally, although the ALJ did not explicitly reference Plaintiff's varicose veins or GAF scores, his failure to do so was at most harmless error.  Plaintiff has not shown how her varicose veins impacted her physical ability to perform work activity, or how her GAF scores precluded her from being able to perform the jobs identified by the VE.  It is well-recognized that GAF scores do not conclusively establish the existence of a severe impairment, nor is an ALJ's failure to reference this score sufficient ground to reverse an ALJ's decision.  *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *13 (E.D.Mich. July 18, 2013) (citing *White v. Comm'r of Soc. Sec.*, No. 10-14365, 2011 WL 5104622, at *3 (E.D.Mich. Oct. 27, 2011) and *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Plaintiff also takes great issue with the ALJ's failure to address the decision rendered by the Bureau of Vocational Rehabilitation ("BVR"), or her need to elevate her legs.  But, the fact that this evidence was omitted from the ALJ's written decision does not mean it was ignored, or that explicit consideration of it would have altered the ALJ's final ruling.

With respect to Plaintiff's need to elevate her legs, Thacker points out that in June 2008, Dr. Jaron Goldberg instructed her to elevate her right leg.  (Tr. 632, 792-93).  Plaintiff was also

advised by Elizabeth Ickes, a physician assistant, to elevate her legs to reduce edema in June 2010.  (Tr. 996).  With this in mind, Plaintiff highlights the VE's testimony in which he stated that such an accommodation would preclude Plaintiff from working because most employers would not allow an employee to elevate her legs continuously during the workday.  The implication is that Dr. Goldberg and Ms. Ickes indicated that Plaintiff would need to elevate her feet over the course of several weeks or even months.  However, the record does not support this conclusion.

After Plaintiff presented to Dr. Goldberg in the emergency room on June 12, 2008, with complaints of right leg pain, the doctor noted Plaintiff suffered from edema in both legs and ultimately diagnosed her with cellulitis.  (Tr. 791-92).  He instructed Plaintiff to rest, elevate her legs, use Tylenol as needed and to follow up with her primary care physician within 3 to 5 days.  (Tr. 792).  Likewise, when Plaintiff was treated by Ms. Ickes for leg edema, she instructed Plaintiff to limit her sodium intake and to wear compression stockings, in addition to elevating her leg.  (Tr. 996).  Ms. Ickes' treatment note also reveals that Thacker's leg edema had improved and Ms. Ickes directed her to schedule a follow up appointment in three months. (*Id*.).

It is clear that the ALJ was aware of these notations in the record because he incorporated Plaintiff's alleged need to elevate her legs into one of the hypothetical questions he posed to the VE.  But, Plaintiff has not identified any records where Dr. Goldberg or any physician informed her of the need to elevate her legs on a long-term basis.[2]  Without such proof, Plaintiff's reliance upon this aspect of the VE's testimony is unavailing.  It was Plaintiff's burden to provide

---

[2] Physician assistants are not viewed as "acceptable medical sources" and their opinions, while not meaningless, are nonetheless not entitled to controlling weight.  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); SSR 06-03p, 2006 WL 2329939 (2006).

evidence establishing the longitudinal nature of her disability.  42 U.S.C. § 423(d)(1)(A), (d)(5)(A).  The Social Security regulations define a disability as a physical impairment expected to last continuously for a period of at least 12 months.  *Id.*  Therefore, even though Plaintiff's need to elevate her leg may have affected her ability to work, the record only supports that it did so temporarily, and certainly not for a continuous period of 12 months or longer.  As a result, the ALJ's failure to discuss this limitation was harmless.

Thacker also claims the ALJ ignored the decision rendered by the BVR.  On March 26, 2008, a rehabilitation counselor with the BVR drafted a letter wherein the counselor determined that Thacker "could not benefit from [their] services" and was "encouraged to apply for SS benefits".  (Tr. 487).  The counselor stated that the decision was based on Thacker's subjective complaints and the information provided to the BVR.  (*Id.*).  However, decisions by other governmental agencies are not binding upon Social Security.  20 C.F.R. §§ 404.1504, 416.904.  This regulation underscores the fact that decisions rendered by other agencies are based upon their rules and not Social Security law.  *Id.*  Accordingly, the ALJ's omission of this evidence had no significant impact upon his ruling as he was not required to credit the finding.

Plaintiff's objection to the VE's evaluation of her obesity is also overruled.  While it is true that Social Security Ruling 02-1p advises adjudicators to consider a claimant's obesity during the disability evaluation process, SSR 02-1p, 2002 WL 34686281, the ruling does not require an ALJ to provide an exacting account of how the claimant's obesity impacted the ALJ's ruling at each step of the sequential analysis as Plaintiff implies.  In the case herein, the ALJ specifically noted Plaintiff's marked obesity, highlighting medical records documenting Plaintiff's protracted history with the disease.  (Tr. 32).  But, after reviewing the entire record, the ALJ concluded Plaintiff retained the ability to participate in routine tasks.  (Tr. 36).

10

As the Sixth Circuit found in *Essary v. Commissioner of Social Security*, 114 F. App'x 662, 667 (6th Cir. 2004), "[t]he absence of further elaboration on the issue of obesity likely stems from the fact that [Plaintiff] failed to present evidence of any functional limitations resulting specifically from her obesity." *Id.* (*citing Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004)).  Notably, Thacker failed to come forward with any evidence suggesting that her obesity further compounded her other impairments.  Instead, she faults the ALJ for failing to argue the alternative.  But, unfortunately for Plaintiff, she carried the burden of demonstrating that her obesity contributed to her disability.  *See Smith v. Astrue*, 639 F. Supp. 2d 836, 845 (W.D.Mich. 2009) (ALJ's brief and limited discussion of the claimant's obesity was sufficient because Smith failed to identify medical opinion evidence showing that her obesity restricted her ability to work).

Lastly, Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination, finding her capable of performing light work but limited to occasional overhead reaching, was internally inconsistent.  This argument is tenuous and is rejected.  It is commonplace for ALJs to articulate their RFC determinations as the ALJ did here.  ALJs are tasked with the responsibility of assessing the claimant's RFC.  Because the governing regulations define "light work" as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds", 20 C.F.R. §§ 404.1567(b), 416.967(b), the ALJ held that Plaintiff possessed the capacity to perform light work with a few exceptions, such as her inability to perform overhead reaching.  This and the other limitations announced by the ALJ did not eradicate Plaintiff's ability to perform the remaining functions associated with light work.

### B.  Credibility

Thacker also challenges the ALJ's assessment of her credibility.  It is the ALJ's responsibility to make decisions regarding the credibility of witnesses.   "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding this standard, the ALJ must clearly state his reasons for rejecting a claimant's complaints as incredible.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The Social Security regulations set forth the criteria an ALJ should consider when evaluating a claimant's credibility.  20 C.F.R. §§ 416.929(c)(3)(i)-(vii), 404.1529(c)(3)(i)-(vii).

The Sixth Circuit has further explained that "[s]ubjective complaints of pain or other symptoms shall not alone be conclusive evidence of disability."  *Vance*, 260 F. App'x at 806 (*citing Arnett v. Comm'r of Soc. Sec.*, 76 F. App'x 713, 716 (6th Cir. 2003)) (internal quotations omitted).  This circuit has established a two-part test to evaluate a claimant's complaints of disabling pain when the claimant's pain forms the basis of her disability claim.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."  *Id.* (*citing* 20 C.F.R. § 416.929(a)).  If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities."  *Id.*  Social Security Ruling 96-7p lists the factors relevant to the ALJ's determination at this step.  These factors include:  the individual's daily activities, the frequency and intensity of the individual's pain or other

12

symptoms, any medication the individual takes or has taken to alleviate pain or other symptoms, and treatment, other than medication, the individual has received for relief of pain or other symptoms. SSR 96-7p.

In the instant case, the ALJ believed that Thacker suffered from conditions which could cause her significant pain, but largely discounted Thacker's statements regarding the actual severity and limiting effects of her pain.  Despite Plaintiff's claims that she was extremely limited in her ability to stand, sit and walk, the ALJ noted that the objective evidence of record only revealed mild to moderate symptoms.  For instance, the ALJ pointed out that Plaintiff did not appear to exhibit many of the signs associated with chronic pain, such as muscle atrophy, spasm, rigidity or tremor.  Nor was there evidence of persistent neurological deficits, signs of nerve root compromise or significant pathological findings.

Plaintiff attacks these reasons provided by the ALJ arguing that it was improper for the ALJ to discredit her pain stemming from fibromyalgia on these bases.  Given the nature of fibromyalgia, objective findings are often misleading as the disease cannot be objectively verified through any concrete medical tests.  *Rogers*, 486 F.3d at 243.  In fact, fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion." *Id.* (*citing Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820) (6th Cir. 1988)).  Because of this, "subjective complaints play an important role in the diagnosis and treatment of the condition, and justification for discounting a claimant's statements is particularly important." *Id.* (*citing Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)).

Although the ALJ initially discredited Plaintiff's allegations of pain due to a lack of objective evidence, the ALJ later provided other acceptable reasons for discrediting Thacker's

13

claims.  First, the ALJ noted that Plaintiff's fibromyalgia responded positively to medication. Treatment notes show that medication lessened Thacker's pain from fibromyalgia by 30%.  (Tr. 31, 645).  Plaintiff makes much of the fact that this medication still left her with 70% of her pain. But, Plaintiff's argument is misleading.  The treatment note at issue also states that Thacker's doctor intended to gradually increase her medication to "give [Thacker] an 80% improvement on her muscle pain."  (Tr. 645).  Without acknowledging this comment, Plaintiff then claims that her pain continued even after taking medication.  Yet, Plaintiff did not cite to any medical evidence showing that her medication did little to resolve her pain.  Consequently, the undersigned finds it was reasonable for the ALJ to consider Plaintiff's pain relief from medication as a factor reflecting the severity of her pain.

Notwithstanding, the ALJ also found that Plaintiff's alleged limitations were also inconsistent with her other medical treatment.  The ALJ noted that Plaintiff's impairments responded favorably to therapy, pain injections and nerve blocks.  The ALJ further noted that there was at least one notation in Thacker's medical record indicating she was non-compliant with treatment.  Additionally, he highlighted that Plaintiff did not report any negative side effects from her medication and denied the need to use an ambulatory aide.  Plaintiff did not assert any arguments successfully challenging this aspect of the ALJ's opinion.

In addition, the ALJ found that Plaintiff's activities of daily living undermined her allegations regarding her limitations.  The ALJ commented that Plaintiff's activities included: driving without difficulty, performing shared household chores, grocery shopping with her husband, working part-time and using the computer regularly.  Furthermore, Thacker admitted to using a tanning bed, carrying a cooler to a Christmas party, walking her dog and doing housework for roughly seven hours.

Plaintiff objects to the ALJ's use of her daily activities as a means to undermine her alleged pain. However, the governing regulations and case law, permit ALJs to consider a claimant's activities when judging her credibility. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 472 (6th Cir. 2012) (ALJ properly considered claimant's daily activities before making credibility finding); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Although Plaintiff may not have completed these tasks for 40 hours a week, her ability to maintain a wide range of activities supports the ALJ's RFC as it shows that Plaintiff retains a significant level of mobility and functionality. The undersigned notes that on February 5, 2009, Dr. Tauseef Syed, M.D. opined Plaintiff was able to perform activities of daily living despite diagnosing her with fibromyalgia. (Tr. 943, 946). Though Plaintiff may complete these tasks slower than she would without her impairments and/or with the assistance of others, she is able to complete these tasks. This evidence helps to establish that Plaintiff retained some ability to work and was therefore proper for the ALJ to consider. *See Dickson v. Comm'r of Soc. Sec.*, No. 11-10281, 2012 WL 175329, at *4-5 (E.D.Mich. Jan. 23, 2012) (proper for ALJ to consider Plaintiff's daily activities in determining whether she could work even though she completed tasks slowly, with the assistance of others and used a scooter).

Lastly, the ALJ also considered the medical opinion evidence of record. The ALJ explained that "no treating or examining physician ha[d] indicated that the claimant [wa]s disabled." (Tr. 37). Moreover, the ALJ noted that Plaintiff's treating physician had only imposed one exertional limitation upon her – a restriction on lifting more than 20 pounds at a time. (*Id.*). On two occasions Plaintiff's treating physician, Dr. Edwin Davis, commented on Plaintiff's ability to work. (Tr. 475, 514). On both occasions, the doctor released Plaintiff to

work so long as she did not lift more than 20 pounds.  Therefore, the medical opinion evidence does not align with Plaintiff's alleged claims that her impairments are disabling.

### C.  VE Testimony

Plaintiff vigorously challenges the ALJ's reliance upon the testimony provided by the vocational expert.  Once it is determined that a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity existing in the national economy.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008)* (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).  "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs.  *See id*.  The hypothetical question must accurately portray the claimant's physical and mental state, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002), however, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."  *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987)).  Ultimately, "[i]t is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony."  *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

Thacker first argues that the VE's testimony was unreliable because the job incidence numbers provided were based on regional rather than national figures.  During the hearing, the VE indicated that his testimony was based upon the number of jobs available within the North

16

Central Ohio region.   At step five of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is capable of performing work which exists in significant numbers in the national economy.   *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (*citing Young*, 925 F.2d at 148); 20 C.F.R. §§ 404.1512(f), 404.1560(c), 416.912(f), 416.960(c).  Yet, the regulations state that work will be deemed to exist in significant numbers in the national economy when it "exists in significant numbers in either the region where such individual lives or in several regions of the country."   42 U.S.C. § 423(d)(2)(A) (2004).  Therefore, the Sixth Circuit has permitted ALJs to base their findings on regional rather than national job incidence figures.  *See Kelly v. Sec'y of Health & Human Servs.*, 842 F.2d 331 (6th Cir. 1988) (Table) ("1500 jobs in the regional economy must be found to satisfy the significant numbers requirement"); *see also Pollice v. Sec'y of Health & Human Servs.*, 843 F.2d 1392 (6th Cir. 1988) (Table) (a significant number of jobs in the national economy may be demonstrated by showing a significant number of jobs in the state).   Accordingly, Plaintiff's objection is overruled.

Next, Thacker asserts that the VE's testimony did not amount to substantial evidence because the number of jobs identified by the VE did not constitute a "significant number of jobs".   The VE identified three sample representative positions Plaintiff was capable of performing, existing in the region in the following incidences:   file clerk (97), housekeeping/cleaner (797) and mail clerk (62).  The VE acknowledged that these numbers were relatively low, but explained that it was consistent with the workforce in that geographic area. Presumably, because of the limited regional workforce noted by the VE, the ALJ asked the VE to identify what percentage of all light and sedentary positions in the region an individual so limited

as Thacker could perform.  In response, the VE answered that such a person would be capable of performing 40% of *all* the light and sedentary positions existing in the region.

Plaintiff's objections to the VE's job incidence figures are based upon Plaintiff's independent interpretation of the VE's testimony.  Thacker points out that the jobs identified by the VE total 956 positions.[3]  But, she then claims that based upon the VE's testimony, she would only be able to perform 40% of these jobs, or 382 of the 956 positions.  This interpretation of the evidence is disingenuous.  During the hearing, counsel asked the VE clarify his statement of the 40% reduction as follows, stating: "Sir, I'm just not, I'm not clear.  I just want to make sure, is it, are you saying that it's 40 percent - - these numbers that you gave represent 40 percent of all the jobs?"  (Tr. 106).  The VE answered, "[n]o, the total reduction in light, unskilled work, which those are examples of, is 40 percent of the total."  (*Id.*).  The ALJ also clarified this portion of the VE's testimony asking, "[s]o the limitations that were identified would reduce - - would take 60 percent of the available light work away?"  (Tr. 107).  To which, the VE responded in the affirmative.  (*Id.*).

As a result, there is no basis for Plaintiff's argument that the VE truly only identified 382 jobs.  The VE repeatedly explained that the 60% reduction was in reference to *all* light and sedentary positions.  In other words, Plaintiff's limitations precluded her from being able to perform 60% of *all* the light and sedentary jobs in her area.  However, she was capable of performing *all* (100%) of the remaining 40% of light and sedentary jobs in the region.  Thus, she would be capable of performing *all* of the 956 jobs identified by the VE.

---

[3] The ALJ incorrectly listed the total as 850 jobs.  (Tr. 38).  The error was *de minimis*.

In light of this clarification, Plaintiff's remaining objections are likewise overruled. Thacker claims that the 956 positions identified did not constitute a "significant number" of jobs. At step-five, the ALJ must prove that the claimant can perform work which exists in *significant numbers* in the national economy.  *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988).  The Sixth Circuit has indicated that there is no bright line establishing what constitutes as a significant number of jobs, or delineating a significant number from an insignificant number, however, the court noted that the question "should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Sias*, 861 F.2d at 480 (*citing Hall,* 837 F.2d at 275).  In making this determination, the ALJ should consider: "the level of [the] claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance [the] claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs; [and] the types and availability of such work[.]" *Hall*, 837 F.2d at 275.

The undersigned is satisfied that the ALJ properly contemplated these factors.  The ALJ did not believe that Plaintiff's impairments, or the symptoms therefrom, rendered her completely disabled.  Though the ALJ acknowledged that Plaintiff indeed suffered from many symptoms, he discounted the frequency, duration and severity of Thacker's symptoms, thus, discounting her level of disability.  Additionally, as previously discussed, the ALJ reasonably discounted the veracity of Plaintiff's statements regarding her symptoms.

Plaintiff notes that she does not have any special or unique skills which would enhance her ability to perform the jobs enumerated by the VE.  She also argues that the limited workforce within her region makes it likely that she would need to seek employment in a different region,

consequently requiring her to drive and sit for longer periods of time.  However, these arguments are pure conjecture and are insufficient to justify remand or reversal.  Contrary to Plaintiff's suggestion, it is arguable that Plaintiff's prior experience working as a hospital cleaner may be of a benefit to her in acquiring and working in a job as a housekeeper or cleaner.  On the other hand, there is no support for Plaintiff's contention that she would have to drive outside of her region to secure a position.  Moreover, the Court's role at the point is to review the ALJ's decision and to determine whether it is supported by substantial evidence.  The Court may not engage in a *de novo* determination of the reliability of the VE's testimony, as it seems Plaintiff seeks.  *Sias*, 861 F.2d at 481.

Based on a review of the record, the undersigned is satisfied with the ALJ's review of the vocational expert's testimony.  The ALJ noted that the expert's testimony was uncontradicted and consistent with the DOT.  In light of this testimony, the ALJ ruled that Plaintiff's ability to perform 40% of all the unskilled work in her local region, including the 956 positions identified by the VE, proved that there were a significant number of jobs available to Thacker.  Plaintiff has not presented any persuasive arguments as to why this evidence should be rejected.  The Sixth Circuit has held that "fewer than 1000 regional jobs can be a significant number for purposes of determining whether a claimant is disabled."  *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (*citing Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006)) ("870 jobs can constitute a significant number in the geographic region."); *Stewart v. Sullivan*, No. 89-6242, 1990 WL 75248, at *3 (6th Cir. June 6, 1990) (Table) ("We are not troubled by the seemingly low percentage of relevant jobs in Stewart's local geographical area. . . . we hold that 125 relevant jobs can be a significant number of jobs in that region.").

20

Plaintiff's reliance upon this Court's ruling in *Anderson v. Astrue*, No. 3:11-cv-1536, 2012 WL 7110362 (N.D.Ohio Dec. 17, 2012) (Helmick, J.), is unavailing, as the facts in that case are easily distinguishable from those in the present case.  In that case, the Court distinguished Anderson's circumstances from those of another claimant in a case from the Eighth Circuit.  *Anderson*, 2012 WL 7110362, at *5-6.  The Court ruled that 500 jobs did not constitute as a significant number because, *inter alia*, Anderson had only one month of prior work experience, no special or unique abilities suiting him for the positions identified by the VE, and no driver's license.  *Id*.

In the case *sub judice*, the VE identified nearly double the number of jobs identified in Anderson.  Furthermore, Plaintiff's prior work history is much more extensive and lengthy than that at issue in *Anderson*.  In addition, Plaintiff admitted that she is licensed to drive and does so on a regular basis.  As an aside, the undersigned also notes that *Anderson* did not find the vocational expert's use of regional job figures to be erroneous.  *Id*. at *6.  Instead, the Court merely noted that the expert's use of regional numbers made it "difficult to assess the reliability" of his testimony.  *Id*.  Accordingly, the Court's ruling in *Anderson* does not persuade the undersigned that the VE's testimony was unreliable.

## VIII.  <u>DECISION</u>

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

<u>s/ Kenneth S. McHargh</u>
Kenneth S. McHargh
United States Magistrate Judge

Date: <u>August 6, 2013.</u>

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).