**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Victoria Thacker,   Case No. 3:12CV1869

    Plaintiff

    v.   **ORDER**

Commissioner of Social Security,

    Defendant

In this appeal, I review defendant Commissioner of Social Security's (Commissioner) decision denying Victoria Thacker's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381 *et seq*.

Plaintiff objects to the Magistrate Judge's Report and Recommendation (R&R) (Doc. 23) and requests that I overrule the R&R and reverse the Commissioner's decision. (Doc. 24).

Jurisdiction is proper under 42 U.S.C. §§ 405(g), 1383©.

For the following reasons, I adopt in full the R&R, and I affirm the decision of the administrative law judge (ALJ).

**Background**

Numerous decisions have laid out the facts supporting Thacker's applications to the Social Security Administration, so I only briefly summarize the information here.

Thacker has a high school education, obtaining a GED in 2002. She has held a variety of jobs including short-order cook, donut maker, conveyor feeder/offload bearer, hospital cleaner, and institutional cook.

Among Thacker's physical medical issues, she has degenerative disc disease of the cervical and lumbar spines, obesity, a right heel spur, fibromyalgia, hypothyroidism, gastroesophageal reflux disease, cellulitis, and bilateral edema. Before a gastric bypass surgery, she weighed approximately 350 pounds. At her hearing before the ALJ, she weighed approximately 275 pounds. Thacker also has a depressive disorder and an obsessive compulsive disorder, both not otherwise specified.

On March 24, 2008, Thacker applied for DIB and SSI. She alleged disability beginning on June 20, 2006. The Social Security Administration denied both her initial request and her request for reconsideration. On June 11, 2010, an ALJ held a hearing to review her case. At the hearing, Thacker and Carl Hartung, a vocational expert (VE), testified.

On October 18, 2010, the ALJ found that Thacker had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except she could not climb ladders. He also stated that she could occasionally climb stairs, stoop, kneel, crouch, crawl, and reach overhead. Accordingly, the ALJ found that plaintiff was not disabled.

The Appeals Council denied further review, making the ALJ's decision final. Plaintiff filed an appeal to this court. Magistrate Judge Kenneth S. McHargh issued an R&R upholding the Commissioner's decision.

Plaintiff makes several objections to the R&R. First, she argues the Magistrate did not adequately address the ALJ's failure to discuss her edema and the need to elevate her legs, varicose veins, global assessment of functioning (GAF) score,[1] and obesity. Second, plaintiff challenges the Magistrate's assessment of plaintiff's ability to do light work. Third, plaintiff contends the Magistrate erred in finding substantial evidence supported the ALJ's credibility determination. Finally, plaintiff argues that the Magistrate incorrectly assumed there was a high number of jobs nationally based on the number of jobs in the region.

## Standard of Review

When reviewing the Magistrate's R&R, I make a de novo determination regarding the portions to which plaintiff objects. *See* 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's decision, I must determine whether substantial evidence supports the ALJ's findings, and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[1] GAF measures social, occupational, and psychological functioning.

*Brainard*, *supra*, 889 F.2d at 681 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, I view the record as a whole, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

## Discussion

To receive disability benefits, a claimant must prove that she "is unable to engage in any substantial gainful activity as a result of a medically determinable physical or mental impairment which can be expected to last for a period of at least twelve months." *Murphy v. Sec'y of Health and Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986) (citing 42 U.S.C. § 423(d)(1)(A)). The claimant must also show that the impairment results from an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1528, 416.913, 416.928.

To determine whether a claimant has a disability, the ALJ uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g) (applying the five step process to determine disability insurance benefits and supplemental security income, respectively). The ALJ considers whether: 1) claimant is engaged in work that constitutes substantial gainful activity; 2) claimant is severely impaired; 3) claimant's impairment meets or equals the Secretary's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1; 4) claimant can perform past relevant work; and 5) other jobs exist in significant numbers to accommodate claimant if claimant cannot perform her past relevant work, given her RFC, age, education and past work experience. 20 C.F.R. § 404.1520.

The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

## A. ALJ's Failure to Discuss Certain Medical Evidence

Thacker argues that the Magistrate erred by deeming the ALJ's failure to specifically address her edema, varicose veins, GAF scores, and obesity as harmless error. The Magistrate correctly notes that as a general matter the ALJ does not have to expressly address each of the claimant's impairments in his decision. *See Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision each piece of evidence submitted by a party."). While the ALJ should ideally articulate all of his reasons, remanding or reversing serves no purpose if the ALJ's omissions are harmless error. *Id.*

### 1. Edema and the Need for Elevation of Legs

Thacker first argues at length that her edema is a critical issue that the ALJ failed to consider. This simply is not true. While the ALJ does not specifically mention the edema, he was clearly aware of it. As the Magistrate points out, the ALJ incorporated plaintiff's need to elevate her legs, as a result of edema, in one of his hypothetical questions to the VE. Plaintiff argues that this is not sufficient because he did not mention this in his decision.

In *Hicks v. Comm'r of Soc. Sec.*, 2013 WL 3778947 (E.D. Mich. 2013), *3, the court found that the ALJ's failure to consider a mental impairment was evidenced by his hypothetical question to the VE which specifically disregarded the claimant's mental limitations. The exact opposite occurred here. The ALJ's hypothetical question included the need for leg elevation which strongly suggests that the ALJ did consider this element when making his decision.

5

Furthermore, the ALJ specifically mentions plaintiff's condition in making his RFC determination, stating that Thacker claims she "needs to sit due to leg swelling, sitting and propping up her legs at least three times a day." (Doc.12, 34). Thus, it is clear that the ALJ took plaintiff's edema, and subsequently her need to elevate her legs, into account when making his decision despite not using the word "edema."

Moreover, there is a substantial basis for the ALJ's decision to deny benefits despite plaintiff's edema. While plaintiff characterizes the edema as ongoing and worsening due to pitting, the record is not so clear. By June 2010, plaintiff's edema had improved (Doc. 12 at 996). Furthermore, nowhere in the record did a physician inform plaintiff of the need to elevate her legs on a long-term basis. Doctors instructed plaintiff to elevate her legs to assist with edema only two times between 2006 and 2010. (Doc. 12 at 792, 996).

As the Magistrate Judge notes, "[E]ven though Plaintiff's need to elevate her leg may have affected her ability to work, the record only supports that it did so temporarily, and certainly not for a continuous period of 12 months or longer." (Doc. 23, 10). Tellingly, both in March and May, 2010, her physician noted edema but did not include elevation of legs in the patient plan. (Doc. 12 at 973, 981). While the edema may have been chronic, there is no substantial evidence showing plaintiff's ongoing need to elevate her legs. Plaintiff failed to meet her burden to provide evidence establishing the longitudinal nature of her disability. 42 U.S.C. § 423(d)(1)(A), (d)(5)(A).

### 2. Varicose Veins and GAF Scores

Plaintiff also claims that I must reverse the ALJ's decision because he did not explicitly reference her varicose veins or GAF scores. The Magistrate finds that this failure was at most harmless error.

The Magistrate states that plaintiff made no showing her varicose veins would impact her physical ability to perform work activity. The record supports this. While plaintiff points out various diagnoses of varicose veins, she does not indicate that she cannot work as a result of them.

Regarding plaintiff's GAF scores, it is important to note that they "do not conclusively establish the existence of a severe impairment." *Hicks*, *supra*, *13. Moreover, similar to the varicose veins issue, plaintiff again fails to demonstrate how her scores preclude her from being able to work.

In *Hicks*, the claimant argued that her GAF scores of 50 and 55 were "obviously inconsistent" with the ALJ's determination that her mental impairment was non-severe. *Id*. The court, however, found that Hick's argument was without merit because a score of 50 "does not necessarily demonstrate disability, and courts have affirmed denials of disability benefits when claimants had GAF scores of 50 or lower." *Id.* (citing *DeBoard v. Comm'r of Soc. Sec.*, 214 F. App'x 411, 416 (6th Cir. 2006)).

Plaintiff's case is indistinguishable. Her GAF scores are also 50 and 55. (Doc. 12 at 658, 875). Moreover, in making his determination that plaintiff's mental impairment is not severe, the ALJ noted that plaintiff had displayed signs and symptoms of mild depression but "the record again fails to document serious problems interacting with other, an inability to complete tasks, or significant memory loss." (Doc. 12 at 36). He noted that plaintiff drove without difficulty, shared household chores, went grocery shopping, and even worked part-time. She also walked her dog, did housework for hours at a time, and drove four-to-five miles multiple times a week. Thus, it is entirely reasonable that the ALJ concluded that plaintiff's mental impairment is not severe, and that conclusion is supported by substantial evidence.

### 3. Obesity

Finally, plaintiff argues that the ALJ did not sufficiently explain how her obesity factored into the RFC. Again, as the Magistrate noted, plaintiff failed to present evidence of obesity compounding her other impairments. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) ("[t]he absence of further elaboration on the issue of obesity likely stems from the fact that [plaintiff] failed to present evidence of any functional limitations resulting specifically from her obesity."). While treating physicians all note Thacker's obesity, they do not suggest that it imposed any additional work-related limitations.

Plaintiff attempts to distinguish her case from *Essary*, stating that her obesity was a severe impairment and the claimant's in *Essary* was not. Plaintiff's argument is flawed.

The ALJ noted that plaintiff's obesity was only severe in combination with all her other impairments. When obesity in combination with other impairments is severe, plaintiff still must show specifically how obesity exacerbated the other impairments. *Smith v. Astrue*, 639 F.Supp.2d 836, 846-47 ("In the context of judicial review of the ALJ's decision, [plaintiff] had the burden of showing specifically how the obesity, in combination with other impairments, limited her ability to a degree inconsistent with the ALJ's RFC determination."). Plaintiff has not done so, and her objection is without merit.

### B. Ability to Do Light Work

The ALJ found that plaintiff could perform light work but could not climb ladders and that she could occasionally climb stairs, stoop, kneel, crouch, crawl, and reach overhead. (Doc. 12 at 33-34). Plaintiff contends that she cannot reach overhead with one arm to lift twenty pound objects nor can she push or pull them with one arm.

Plaintiff has not previously indicated that she can only use one arm. In all her medical reports, physicians have not restricted the amount of weight she can lift to one arm. (Doc. 12 at 768, 620, 487). Furthermore, her medical reports all indicate that she can lift up to 20 pounds occasionally. *Id.* Moreover, the ALJ explicitly included limitations in his RFC determination saying that plaintiff could perform only occasional overhead reaching. Thus, the ALJ's RFC determination is entirely consistent with medical reports and is upheld.

### C. Credibility Determination

Plaintiff objects to the ALJ's use of her daily activities in making his credibility determination. The ALJ had noted that plaintiff carried a cooler to a Christmas party, used a tanning bed, walked her dog, drove four-to-five miles five days a week, and could use a computer to regularly check email. (Doc. 12 at 36).

Plaintiff argues that the record is not complete – for instance, it does not indicate what was in the cooler or how long she walked her dog. Without knowing those details, plaintiff contends, no assumptions can be made about her functional capabilities. Plaintiff further argues that performing these activities does not necessarily mean she can work a full-time job.

Analyzing her daily activities as a whole helps assist the ALJ in assessing the severity of plaintiff's impairments. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (daily activities are relevant in assessing intensity and persistence of claimant's pain). The ALJ can consider daily activities in making his credibility determination, *see Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012). As the Magistrate noted, the mere fact that she is able to maintain a wide range of activities, which also includes doing housework for up to seven hours at a time, indicates that she retains a significant level of mobility and functionality.

9

Ultimately, what was in the cooler does not matter. More important is that plaintiff's ability to carry a cooler is consistent with her physicians' assessments that she can carry up to twenty pounds. (Doc. 12 at 768, 620, 487). Moreover, the ALJ did not analyze plaintiff's credibility in terms of her daily activities alone but also looked at her medical records and regimen, emotional condition, and her overall testimony. (Doc. 12 at 34-36). Thus, I find that the ALJ's credibility determination was supported by substantial evidence.

### D. Number of Regional Jobs

Plaintiff first objects to the Magistrate's characterization of the percentage of jobs available to Thacker. The VE testified that an individual with limitations like Thacker could perform 40% of the light and sedentary jobs available in the region. The VE gave examples of these jobs saying that there were 97 positions for file clerks, 797 for housekeeping/cleaners, and 62 for mail clerks, totaling 956.

Plaintiff continues to argue that only 382 jobs, or 40% of the 956, are available. As the Magistrate noted, this is disingenuous. At the hearing, plaintiff's counsel even asked the VE for to clarify how many jobs were available:

> Counsel: Sir, I'm just not, I'm not clear. I just want to make sure, is it, are you saying that it's 40 percent – these numbers that you gave represents 40 percent of all jobs?
>
> VE: No, the total reduction in light, unskilled work, which those are examples of, is 40 percent of the total.

(Doc. 12 at 106).

The VE was unequivocal on this point. Plaintiff's argument is without any merit.

Plaintiff also contends that the Magistrate erred in finding that the 956 jobs constituted a significant number of jobs in the economy. In support, plaintiff cites to *Mackins v. Astrue*, 655

10

F.Supp.2d 770, 773 (W.D. Ky. 2009), which held that 900 regional copy machine attendant jobs did not constitute a significant number of jobs in the national economy.

Thacker's case is easily distinguishable. In *Mackins*, the VE eliminated claimant from performing any jobs except for copy machine operator. The court expressed disbelief that 900 full-time *copy machine* jobs existed, stating, "[I]n this age of computers, e-mail, electronic court filing, paperless billing, and other time-saving technology, it is difficult to imagine that there are 900 full-time copy machine attendant jobs in the state economy." Contrary to plaintiff's assertion, the court did not find that 900 was too low a number. Rather, the issue in that case was whether 900 full-time copy machine jobs were actually available.

Unlike the claimant in *Mackins*, Thacker is not limited to one type of job but a variety including mail clerk, housekeeper, and file clerk.  It is entirely reasonable that there are a total of 956 of these types of jobs as technological advances have yet to replace them.

Moreover, as the Magistrate noted, there is no bright line establishing what constitutes a significant number of jobs. *See Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480. Rather, it "should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1998)).

The Sixth Circuit has repeatedly found that fewer than 1000 regional jobs can be a significant number of jobs to determine whether a claimant is disabled.  *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (citing *Martin v. Comm'r*, 170 F. App'x 369, 375 (6th Cir. 2006) ("870 jobs can constitute a significant number in the geographic region.")). Thus, plaintiff's contentions fail

11

given the ALJ's proper reliance on the VE's unchallenged, responsive testimony and his consideration of plaintiff's impairments and the nature, types, and availability of work.

Finally, plaintiff notes that in the ALJ's hypothetical where claimant must elevate her legs at work, the VE said the need to elevate would eliminate all jobs. Plaintiff argues that because she has that need, there are no jobs for her. Plaintiff has made the same argument before the Magistrate and it is again without merit. As I found above that plaintiff's need to elevate her legs is not ongoing, this hypothetical has no bearing on plaintiff's ability to work.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT

1. Plaintiff's objections to the Magistrate Judge's Report and Recommendation (Doc. 24) be, and the same hereby are overruled; and

2. The Report and Recommendation (Doc. 23) be, and the same hereby is adopted as the order of this court.

So ordered.

/s/ James G. Carr
Sr. United States District Judge